**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
JAY FINK,

       Petitioner,

  v.                                                                    **9:00-CV-0200**
                                          **(NPM)**

**FLOYD BENNETT, Superintendent, Elmira**
**Correctional Facility,**

       Respondent.
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                                       **OF COUNSEL:**

**FOR THE PETITIONER:**

**JAY FINK**
Petitioner, *pro se*
96-B-1701
Upstate Correctional Facility
PO Box 2001
309 Bare Hill Road
Malone, NY 12953

**FOR THE RESPONDENT:**

**HON. ANDREW CUOMO**                   **SENTA B. SIUDA, Esq.**
Office of Attorney General                   Asst. Attorney General
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

**NEAL P. MCCURN**
**Senior United States District Judge**

**MEMORANDUM-DECISION AND ORDER**

I.     **Background**

     **A.**     **State Court Proceedings**

     The testimony at trial revealed that on Saturday evening, August 26, 1995, petitioner,

pro se Jay Fink, together with Jack Keller, Walter Hagadorn and his girlfriend, Penny

Hendershot, were drinking beer at the home which Hagadorn and Hendershot shared on Prospect Street in Binghamton, New York ("Prospect Street home").  <u>See</u> Transcript of Trial of Jay Fink (5/13/96) ("Trial Tr.") at 393-94.  When the group ran out of beer, they went to a local bar and, when the bartender refused to sell them beer, they left the area and began walking down the street.  Trial Tr. at 529-30.  Michael Murray, who happened to be driving through the neighborhood at this time, stopped his car after he heard Fink calling out to Murray to stop.  Trial Tr. at 530, 674.  He allowed them into his car, and, when he indicated that he did not know where he could buy beer, it was suggested to Murray that he drive to a local twenty-four hour convenience store.  Trial Tr. at 530.  Murray drove to the store, and Fink and Keller went in that establishment to purchase some alcohol.  After purchasing the beer, the two got back into Murray's car and he drove them back to the Prospect Street home, where Murray joined the group drinking beer.  Trial Tr. at 531-32.  As the evening progressed, Hendershot overheard Fink and Keller speculating that Murray might be a homosexual.  Trial Tr. at 532-33.  Keller eventually exclaimed to Hagadorn and Fink that Murray was "a faggot, we ought to kill him." Trial Tr. at 818.  Fink, Keller, Hagadorn and Murray thereafter drove toward a nearby river and, when they arrived, Keller and Murray got out of the car and approached the river while Hagadorn and Fink drank some beer in Murray's car.  Trial Tr. at 395-96.  Keller returned to the car without Murray and asked Hagadorn and Fink "[w]hat are you guys waiting for?"  Trial Tr. at 396.  He then directed the two to "[g]rab a rock or a stick or something."  Trial Tr. at 396. Hagadorn and Fink each grabbed a stick and approached Murray from behind.  Trial Tr. at 396-97.  Hagadorn hit Murray in the back of his head, Trial Tr. at 397, and, when Murray began to run away, Hagadorn tackled him and punched him in his face.  Trial Tr. at 397.  Keller and Fink

then began kicking Murray, who was on the ground, "all over his body," including his head and stomach. Trial Tr. at 397-98.[1]  Keller eventually ran back to the car, grabbed a screwdriver and, after the other men refused to take it from him, he began stabbing Murray with the screwdriver in his throat and chest, exclaiming that Murray had to be killed because he could identify the perpetrators of the assault. Trial Tr. at 398-99. When Keller finished stabbing Murray, he asked Hagadorn and Fink for their help in disposing of the body into the river. Trial Tr. at 399. Fink obliged and helped dragged Murray toward the river. Trial Tr. at 401.[2]  After the two rejoined Hagadorn at the top of the embankment, the three men entered Murray's car and Fink drove the trio to a house where Keller picked up some clean clothes. Trial Tr. at 401-02.

On Sunday morning, the three men began driving to New York City. Trial Tr. at 403. On the way there, one of the tires on the car became flat so the group decided to take a train into New York City. Trial Tr. at 403-04. During that trip, Keller purportedly threatened to harm the others if they informed anyone about the murder. Trial Tr. at 405. Notwithstanding that warning, when Hagadorn eventually returned to Binghamton, he told several people about what had transpired. Trial Tr. at 409. One of Hagadorn's friends then called the police and handed the phone to Hagadorn, who spoke with law enforcement agents and directed them to the scene of the crime. Trial Tr. at 409-10. Based upon their discussion with Hagadorn, the police began looking for Fink, who was eventually arrested in New York City in early October, 1995. Trial

---

[1]     Fink admitted during cross-examination that after Murray had already been beaten unconscious during the assault, Fink chose to kick Murray in the head. Trial Tr. at 824-25.

[2]     As Murray was being dragged toward the river, he was gurgling on his own blood. Trial Tr. at 400.

Tr. at 572-73.

On October 13, 1995, a Broome County grand jury returned an indictment against Fink, Keller and Hagadorn, charging the men with two counts of second degree murder.  The first count in that accusatory instrument alleged that the three intentionally killed Murray, while the second charged those defendants with causing Murray's death "under circumstances evincing a depraved indifference to human life."  See Indictment No. 95-576 ("Indictment").  Fink's jury trial on those charges commenced in Broome County Court on June 10, 1996 with County Court Judge Patrick H. Mathews presiding.  At the conclusion of that trial, Fink was found not guilty of the intentional murder of Murray, but guilty of his depraved indifference murder. Trial Tr. at 1035.  Fink appeared before Judge Mathews for sentencing on July 16, 1996, and was sentenced to a term of imprisonment of twenty-five years to life.  See Transcript of Sentencing of Jay Fink (7/16/96) at 35.

Fink appealed his conviction to the New York State Supreme Court, Appellate Division, Third Department.  In his appellate brief, Fink's appellate counsel argued that:  i) the jury's guilty verdict was flawed and contrary to the evidence adduced at trial; ii) the trial court improperly denied two mistrial applications made by defense counsel during the course of Fink's trial; and iii) the sentence imposed on Fink was harsh and excessive.  See Appellate Brief on Appeal (1/31/98) ("App. Br.").  The Broome County district attorney opposed that appeal, and on June 11, 1998, the Third Department unanimously affirmed Fink's conviction. See People v. Fink, 251 A.D.2d 751 (3rd Dep't 1998).  The Court of Appeals subsequently denied Fink's application for leave to appeal to that court.  See People v. Fink, 92 N.Y.2d 924 (1998).

4

On March 23, 1999, Fink filed a motion to vacate his judgement of conviction pursuant to New York's Criminal Procedure Law ("CPL"), section 440.10 ("CPL Motion").  In that application, Fink alleged that:  i) his conviction was the product of prosecutorial misconduct, which included the withholding of <u>Brady</u>[3] material from Fink's defense; and ii) the trial court's instructions to the jury were confusing and wrongfully shifted the burden of proof to the defense.  <u>See</u> CPL Motion, Points I, II.  That application was opposed by the Broome County district attorney, and in his Decision and Order dated November 10, 1999, Judge Mathews denied the motion.  <u>See</u> <u>People v. Fink</u>, No. 95-516 (Broome Cty. Ct. Nov. 10, 1999) ("November, 1999 Order").  Fink did not seek leave to appeal the denial of his CPL § 440 motion from the Appellate Division.  <u>See</u> Petition at ¶ 11(c)(1).

**B.**   **This Action**

Fink filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 in this District on February 2, 2000.  Dkt. No. 1.  In his pleading, Fink alleges that:  i) his conviction was the result of prosecutorial misconduct, including the district attorney's failure to provide defense counsel with all <u>Brady</u> material to which the defense was entitled; ii) the jury charge provided by the County Court was confusing and wrongfully shifted the burden of proof to Fink; and iii) the evidence adduced at trial was insufficient to support the jury's verdict.  <u>See</u> Petition, Grounds One through Three.  After reviewing the petition, Fink's in forma pauperis application and the file in this matter, United States District Judge Lawrence E. Kahn ordered Fink to pay

---

[3]      <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  In <u>Brady</u>, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  <u>Id.</u>, 373 U.S. at 87.

the filing fee required for this action, and directed the respondent to file a response to Fink's

petition.  Dkt. No. 3.  The Office of the Attorney General for the State of New York, acting on

respondent's behalf, subsequently filed an answer in opposition to Fink's application.  Dkt. No.

9.  Respondent also filed a memorandum of law requesting dismissal of the petition.  Dkt. No.

10 ("Resp. Mem.").  On January 9, 2006, this matter was re-assigned to the undersigned for

disposition pursuant to the order of then-Chief Judge Frederick J. Scullin, Jr.  See Dkt. No. 14.

**B.**   **Review of Petition**

**1.**   **Procedurally Forfeited Claim**

Respondent initially argues that Fink's first ground for relief must be denied because he

is procedurally barred from asserting such claim.  See Resp. Mem. at 5-6.

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies,

or demonstrate that there is either an absence of available state remedies or that such remedies

cannot adequately protect his rights.  Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001) (quoting

28 U.S.C. § 2254(b)(1)); Ellman v. Davis, 42 F.3d 144, 147 (2d Cir. 1994).  This is because

"[s]tate courts, like federal courts, are obliged to enforce federal law."  Galdamez v. Keane, 394

F.3d 68, 72 (2d Cir.), cert denied sub nom., Galdamez v. Fischer, 544 U.S. 1025 (2005)

(citation omitted).  As the Supreme Court noted in O'Sullivan v. Boerckel, 526 U.S. 838

(1999):  "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a

state court conviction violates federal law, the state courts should have the first opportunity to

review this claim and provide any necessary relief."  Id., 526 U.S. at 844; see also Galdamez,

394 F.3d at 72 (quoting <u>O'Sullivan</u>).[4]  Furthermore, it is clear that habeas corpus petitioners bear the burden of demonstrating that they have fully exhausted available state remedies.  <u>See</u> <u>Brown v. People of the State of New York</u>, No. 04-CV-1087, 2006 WL 3085704, at *5 (E.D.N.Y. Oct. 30, 2006); <u>Cruz v. Artuz</u>, 97-CV-2508, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002) (citing <u>Colon v. Johnson</u>, 19 F.Supp.2d 112, 119-20 (S.D.N.Y. 1998)) (other citation omitted); <u>Ruine v. Walsh</u>, No. 00 CIV. 3798, 2002 WL 1349713, at *2 (S.D.N.Y. June 19, 2002) (citing <u>Colon</u>).

Fink raised the claims asserted in his first ground for relief in his CPL Motion.  <u>See</u> Affidavit in Support of CPL Motion at 12-25.  However, as noted above, he admits in his federal habeas petition that he never sought leave to appeal Judge Mathews' November, 1999 Order from the Appellate Division.  <u>See</u> Petition at ¶ 11(c)(1).  "'To fully exhaust a CPL § 440 motion in state court, a party must obtain a decision from the Appellate Division regarding his leave application.'"  <u>Rosas v. Artus</u>, No. 05-CV-8440, 2007 WL 1573919, at *1 (S.D.N.Y. May 24, 2007) (quoting <u>Brooks v. Walker</u>, No. 01-CV-760, 2006 WL 1875103, at *8 (N.D.N.Y. July 3, 2006) (Sharpe, D.J.)); <u>see also</u> <u>Thomas v. Greiner</u>, 111 F.Supp.2d 271, 276 (S.D.N.Y. 2000).  Moreover, "[a]n application for leave to appeal the denial of a § 440.10 motion must be made '"within thirty days after service upon the defendant of a copy of the order sought to be appealed.'"  <u>DeVito v. Racette</u>, No. CV-91-2331, 1992 WL 198150, at *3 (E.D.N.Y. Aug. 3, 1992) (quoting CPL § 460.10(4)(a)).  Since the time during which Fink could properly seek

---

[4]     This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  <u>O'Sullivan</u> 526 U.S. at 845; <u>see also</u> <u>Galdamez</u>, 394 F.3d at 72 (citing <u>O'Sullivan</u>).

leave to appeal the County Court's November, 1999 Order has long since expired, it is clear that the claims asserted in Fink's first ground are unexhausted.  Therefore,  it would appear, at first blush, that this Court could properly "deem" this ground exhausted for purposes of this habeas application.  E.g., Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000).  However, in Pesina v. Johnson, 913 F.2d 53 (2d Cir. 1990), the Second Circuit squarely held that even when the statutory time limit for seeking leave to appeal the denial of a CPL motion has passed, federal courts "have no authority to declare as a matter of state law that an appeal from the denial of [a] Section 440.10 motion is unavailable."  Pesina, 913 F.2d at 54.  Thus, until the petitioner "presents his claim to the highest court – whether or not it seems likely that he will be held to be procedurally barred – he has not exhausted available state procedures."  Id.  Thus, Pesina stands for the proposition that district courts must "treat as unexhausted" federal habeas claims initially brought in a CPL § 440 motion where the petitioner failed to seek leave to appeal from the Appellate Division, rather than "deem" such claims exhausted.  See Priester v. Senkowski, No. 02 CIV.3441, 2002 WL 1448303, at * 7 (S.D.N.Y. July 3, 2002) (citing Pesina); Quintana v. McCoy, No. 03-CV-5747, 2006 WL 300470, at *5 (S.D.N.Y. Feb. 6, 2006) (noting that although the Second Circuit's holding in Pesina "may well be on shaky ground, it cannot be nullified by this Court").

In light of the Pesina court's command, petitioner's first ground for relief is unexhausted and the action filed by Fink is therefore necessarily a "mixed" petition, i.e., one containing both exhausted and unexhausted claims.[5]  Under limited circumstances, a federal

---

[5]     Petitioner has plainly exhausted the other claims he raises herein.  See Fink, 251 A.D.2d at 751-753; Fink, 92 N.Y.2d at 924 (New York's Court of Appeals denying Fink leave to appeal).

district court may stay a habeas action containing a "mixed" petition while the petitioner returns to state court to exhaust his claims.  See Rhines v. Weber, 544 U.S. 269 (2005); Van Gorden v. Superintendent, No. 03-CV-1350, 2007 WL 844901, at *5 (N.D.N.Y. Mar. 19, 2007) (Mordue, C.J.).  However, the Rhines Court cautioned federal district courts that they may only stay such mixed petitions where, inter alia, the district court determines the petitioner established good cause for his failure to exhaust his claims in the state courts.  See Rhines, 544 U.S. at 277; Aessa v. Annetts, No. 06 CV 5830, 2007 WL 1299155, at *2 (E.D.N.Y. Apr. 30, 2007), Van Gorden, 2007 WL 844901, at *5.

In the subject action, Fink claims that he did not seek leave to appeal Judge Mathews' November, 1999 Order denying petitioner's CPL Motion because he "did not know he could appeal" that order.  See Petition at ¶ 11(d).  Unfortunately for Fink, "[t]he mere failure of a petitioner to be aware of a particular area of the law ... does not constitute 'cause.'"  Quintana v. McCoy, No. 03-CV-5747, 2006 WL 300470, at *4 n.7 (S.D.N.Y. Feb. 6, 2006) (internal quotation and citation omitted).  Since Fink has not demonstrated good cause for his failure to fully exhaust the claim he asserts in his first ground for relief, this Court may not properly stay this action so as to afford him the opportunity to fully exhaust his prosecutorial misconduct claim.  Rhines, 544 U.S. at 277; Van Gorden, 2007 WL 844901, at *5.  This Court therefore considers the substance of the claims raised by Fink in this ground.

### a.    **Brady Claim**

The first aspect of Fink's initial ground for relief asserts that his Brady rights were violated by the prosecution.

In his CPL Motion, Fink argued that the prosecutor wrongfully failed to provide the

9

defense with <u>Brady</u> material in the form of "the prior mental health treatment of Mr. Hagadorn." <u>See</u> CPL Motion at 14.  In opposing that application, the district attorney declared that "[t]he People were not in possession of any records or reports by mental health professionals concerning Walter Hagadorn, and as such there was nothing to turn over." <u>See</u> Letter in Opposition to CPL Motion (5/26/99) at 3.

To prove a <u>Brady</u> violation, a habeas petitioner "must initially establish that the evidence sought, in fact, existed." <u>Campbell v. Greene</u>, 440 F.Supp.2d 125, 154 (N.D.N.Y. 2006) (McCurn, S.J.) (citations omitted).  In denying Fink's <u>Brady</u> claim, Judge Mathews found that Fink had failed to establish the existence of "psychiatric or psychological diagnosis, history [or] treatment" records relating to Hagadorn.  <u>See</u> November, 1999 Order at 5.  Determination of factual issues made by a State court "shall be presumed to be correct," and a petitioner is required to rebut this presumption by clear and convincing evidence.  <u>Majid v. Portuondo</u>, 428 F.3d 112, 125 (2d Cir. 2005) (citing 28 U.S.C. § 2254(e)(1)); <u>Mask v. McGinnis</u>, 233 F.3d 132, 139 (2d Cir. 2000).  In the present action, petitioner has provided nothing short of sheer surmise which suggests that the prosecution ever possessed the mental health records relating to Hagadorn upon which Fink's <u>Brady</u> claim is based.

Since petitioner has not established that the materials that form the basis of this aspect of his first ground for relief were ever in possession of the prosecutor, the Court denies Fink's <u>Brady</u> claim as patently frivolous.  The undersigned alternatively finds that it is perfectly clear that petitioner has not raised even a colorable claim with respect to this aspect of his first

ground for relief.  Fink's <u>Brady</u> claim must therefore be denied.[6]

**b.     Prosecutorial Misconduct During Summation**

The second and final aspect of Fink's first ground for relief asserts that the prosecutor engaged in misconduct during the course of his summation.  <u>See</u> Petition, Ground One; <u>see also</u> CPL Motion at 16-22.  Specifically, he argues that the District Attorney, in his closing argument, misstated the evidence presented against Fink, improperly instructed the jury on the law it was to consider during the course of its deliberations, and wrongfully suggested that Fink had the burden of proving his innocence.  <u>See</u> CPL Motion at 16-22.

Judge Mathews denied this aspect of Fink's CPL Motion in that court's November, 1999 Order pursuant to CPL § 440.10(2)(c) because Fink improperly failed to raise these claims in his direct appeal.  <u>See</u> November, 1999 Order at 3.

The denial of a claim under CPL § 440.10(2)(c) is an adequate and independent state procedural ground barring federal habeas review of such a claim.  <u>See</u> <u>Artuz v. Bennett</u>, 531 U.S. 4, 7 (2000); <u>Murden v. Artuz</u>, ___ F. 3d ___, ___, No. 05-0610, 2007 WL 2282658, at * 12 (2d Cir. Aug. 10, 2007); <u>Jordan v. Walker</u>, No. 01-CV-0507,  2007 WL 2344861, at *5 (W.D.N.Y. Aug. 14, 2007); <u>Garnsey v. Miller</u>, No. 9:04-CV-95, 2007 WL 2156646, at *3 n.2 (N.D.N.Y. July 25, 2007) (Hurd, D.J., adopting Report-Recommendation of Magistrate Judge

---

[6]     Chief Judge Norman A. Mordue has recently observed that the Second Circuit has not yet articulated the appropriate standard of review federal courts are to utilize when considering unexhausted claims raised in federal habeas petitions.  Specifically, Chief Judge Mordue noted that the majority of courts review the unexhausted claim to determine whether it is "patently frivolous," while a minority of courts will dismiss the unexhausted claim when it  is "perfectly clear that the petitioner does not raise even a colorable federal claim."  <u>Van Gorden</u>, 2007 WL 844901, at *5 (collecting cases).  Since, as noted above, Fink's <u>Brady</u> claim must be dismissed under either standard, this Court does not decide which of these alternative tests must be utilized in considering Fink's unexhausted <u>Brady</u> claim.

Randolph F. Treece).   This Court therefore may not properly review the substance of this final

aspect of Fink's initial ground for relief unless he can show both cause for his procedural

default and prejudice, or alternatively, that a fundamental miscarriage of justice would occur

absent federal habeas review of the claim.[7]  E.g., Ferguson v. Walker, No. 00CIV.1356, 2002

WL 31246533, at *2 (S.D.N.Y. Oct. 7, 2002) ("federal courts may not review state court

decisions that rest on 'an adequate and independent state procedural default unless petitioner

can show both cause and prejudice or a fundamental miscarriage of justice'") (quoting Fama v.

Commissioner of Correctional Services, 235 F.3d 804, 809 (2d Cir. 2000)) (other citation

omitted).

     Fink has failed to show legal cause for his failure to assert in his direct appeal his

challenge regarding the misconduct in which he claims the prosecutor engaged in his

summation.[8]  Significantly, he has never claimed that his appellate counsel rendered ineffective

assistance by failing to raise this issue on appeal.

     Since Fink has not established cause for his procedural default regarding this claim, this

Court need not decide whether he suffered any prejudice, because federal habeas relief is

unavailable under this limited exception permitting review of procedurally barred claims unless

***both*** cause and prejudice is demonstrated.[9]  Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985)

---

[7]    This latter exception, however, is intended for the "extraordinary case, where a
constitutional violation has probably resulted in the conviction of one who is actually
innocent[.]"  Murray v. Carrier, 477 U.S. 478, 496 (1986); see also Lebron v. Mann, 40 F.3d
561, 564 (2d Cir. 1994).

[8]    These claims are plainly based upon matters contained in the record.

[9]    The petitioner bears the burden of demonstrating legal cause for his procedural
default and resulting prejudice.  See Simpson v. Portuondo,  01CIV.8744, 2002 WL

(emphasis added); <u>D'Alessandro v. Fischer</u>, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing <u>Stepney</u>); <u>Moore v. Greiner</u>, No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct. 19, 2005) (citing <u>Stepney</u>); <u>Lutes v. Ricks</u>, No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing <u>Stepney</u> and <u>Jones v. Barkley</u>, No. 9:99-CV-1344, 2004 WL 437468, at *9 (N.D.N.Y. Feb. 27, 2004) (Sharpe, J.) (collecting cases)); <u>Pou v. Keane</u>, 977 F.Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).  Moreover, as discussed more fully below in conjunction with Fink's final habeas claim, there was more than sufficient evidence adduced at trial establishing his guilt of Murray's depraved indifference murder, thereby precluding any finding that he is actually innocent of the second degree murder conviction he challenges herein.  This Court therefore denies this final aspect of Fink's initial ground for relief as procedurally forfeited.

## 2.   **Remaining Claims**

The Court now considers the two additional claims which Fink asserts in this action.

### a.   **Applicable Standard of Review**

The April, 1996 enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.

In discussing this deferential standard, the Second Circuit noted in <u>Rodriguez v. Miller</u>, 439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a

---

31045862, at *5 (S.D.N.Y. June 4, 2002).

> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States"; or (2) was "based on an unreasonable determination of
> the facts in light of the evidence presented in the State court
> proceeding."

Rodriguez, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d));[10] see also DeBerry v. Portuondo, 403

F.3d 57, 66 (2d Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003); Boyette

v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).  In providing guidance concerning application of

this test, the Second Circuit has recently noted that:

> [A] state court's decision is "contrary to" clearly established
> federal law if it contradicts Supreme Court precedent on the
> application of a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but
> nevertheless comes to a different conclusion than the Court did.
> [Williams v. Taylor, 529 U.S. 362,] at 405-06 [2000]; Loliscio v.
> Goord, 263 F.3d 178, 184 (2d Cir. 2001).... [A] state court's
> decision is an "unreasonable application of" clearly established
> federal law if the state court "identifies the correct governing
> legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts" of the case before
> it.  Williams, 529 U.S. at 413.

Thibodeau v. Portuondo, 486 F.3d 61, 65 (2d Cir. 2007); see also Williams v. Artuz, 237 F.3d

147, 152 (2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's determination was merely incorrect or erroneous, but instead whether

such determination was "objectively unreasonable."  Williams, 529 U.S. at 409; see also Sellan

---

[10]     "Clearly established federal law" in this context "refers only to the holdings of the
Supreme Court."  Rodriguez v. Miller, ___ F.3d ___, No. 04-6665PR, 2007 WL 2445120,
at *3 (2d Cir. Aug 29, 2007) (citing Williams, 529 U.S. at 412).

v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).  Objectively unreasonable in this context has

been interpreted as meaning that "'some increment of incorrectness beyond error is required'"

for the habeas court to properly grant the habeas application.  Earley v. Murray, 451 F.3d 71, 74

(2d Cir. 2006) (quoting Francis S., 221 F.3d at 111).

> **b.**      **Substance of Fink's Remaining Claims**

> **i.**      **Ground Two**

In his second ground for relief, Fink alleges that the trial court's jury charge was

"confusing" and improperly shifted the burden of proof to the defense.  Petition, Ground Two.

> **A.**      **Clearly Established Supreme Court Precedent**

Before a federal court may overturn a conviction due to an allegedly erroneous jury

instruction, "it must be established not merely that the instruction is undesirable, erroneous, or

even universally condemned, but that it violated some right which was guaranteed to the

defendant by the Fourteenth Amendment."  Cupp v. Naughten, 414 U.S. 141, 146 (1973)

(internal quotation omitted); Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp).  The

appropriate inquiry is not whether the trial court gave a faulty instruction, but rather "whether

the ailing instruction by itself so infected the entire trial that the resulting conviction violates

due process."  Cupp, 414 U.S. at 147.  Additionally, the Supreme Court has observed that "[t]he

burden of demonstrating that an erroneous instruction was so prejudicial that it will support a

collateral attack on the constitutional validity of a state court's judgment is even greater than the

showing required to establish plain error on direct appeal."  Henderson v. Kibbe, 431 U.S. 145,

154 (1977) (footnote omitted).

> **B.**      **Contrary To, or Unreasonable Application of,**

**Clearly Established Supreme Court Precedent**

The Appellate Division found Fink's "numerous challenges to County Court's ... jury instructions" to be "unpersuasive." <u>Fink</u>, 251 A.D.2d at 752. This Court must therefore ascertain whether that decision is either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent.

In conjunction with this ground, the undersigned has reviewed Judge Mathews' instructions to the jury. <u>See</u> Trial Tr. at 965-1007. That review has satisfied this Court that no aspect of those instructions so infected Fink's trial so as to render his conviction invalid. Specifically, although petitioner claims that the trial court erred in its instruction relating to the depraved indifference murder charge, <u>see</u> Petition, Ground Two; App. Br. at 14-16, the Court is satisfied that such charge properly instructed the jury as to the elements of that charge as reflected in N.Y. Penal L. § 125.25(2), as well as case law that had interpreted that statute at that time.[11] In this regard, the Court notes that although the County Court initially improperly suggested to the jury that it could not consider the charge of depraved indifference murder until it had unanimously determined that Fink was not guilty of the intentional murder of Murray, <u>see</u> Trial Tr. at 1006-07, the Court subsequently instructed the jury – which was still deliberating as to all of the charges brought against Fink – that it could properly consider the depraved indifference murder charge before all twelve of the jurors had unanimously agreed on a verdict relating to the intentional murder charge. <u>See</u> Trial Tr. at 1025-26. Since the jury's deliberations continued on all charges for some time after that clarifying instruction of the

---

[11]     This Court addresses the specific elements the prosecution was required to prove as to this charge <u>post</u>, in conjunction with Fink's third ground for relief, which challenges the sufficiency of the evidence presented at trial.

County Court, petitioner could not have been prejudiced by the trial court's initial suggestion to the jury regarding the manner in which it was to consider the charges against Fink.

Next, as to petitioner's claim that the County Court improperly shifted the burden of proof to the defense, see Petition, Ground Two, such claim is belied by the repeated instructions provided by Judge Mathews to the jury which clearly informed that body that the prosecution, at all times, had the burden of proving Fink's guilt beyond a reasonable doubt. See Trial Tr. at 969 ("[m]embers of the jury, the burden of proof in a criminal trial is on the district attorney .... It never shifts but remains at all times on the district attorney");[12] 984 ("[t]he People are required to prove each and every one of [the elements of depraved indifference murder] to your satisfaction beyond a reasonable doubt before you may convict the defendant of that crime"); 992 ("keep in mind my earlier admonition that you may convict the defendant ... only if the People prove each and every element to your satisfaction beyond a reasonable doubt. If the People fail to prove ... one or more elements beyond a reasonable doubt, you must find the defendant not guilty").[13]

---

[12]    The trial court did, however, properly instruct the jury that Fink bore the burden of proving his affirmative defense of duress. See Trial Tr. at 969, 995; see People v. Bastidas, 108 A.D.2d 866 (2d Dept.1985), aff'd, 67 N.Y.2d 1006 (1986).

[13]    The County Court also advised the jury of this legal precept at the beginning of the trial once the twelve members were sworn in as jurors. Specifically, Judge Mathews advised the jurors that:

> [T]here are very important rules of criminal law that apply to this trial as they apply to every criminal trial.... First of all, there is an Indictment. But the Indictment is proof of absolutely nothing. It is simply an accusation. The defendant is presumed by law to be innocent. Therefore, during the course of this trial, you may not look to the defendant to prove anything to you. He has no obligation to prove anything to the jury. He doesn't have to prove to you that he's innocent; he

In light of the foregoing, this Court finds that the Appellate Division's decision denying these claims, see Fink, 251 A.D.2d at 752 is neither contrary to, nor represents an unreasonable application of, relevant Supreme Court precedent.  Thus, this Court denies Fink's second ground for relief.  E.g., Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir. 1996) (citing Cupp); McMoore v. Miller, No. 98-CV-1915, 2002 WL 975305 (N.D.N.Y. Apr. 19, 2002) (Sharpe, M.J.), adopted McMoore v. Miller, No. 98-CV-1915 (Dkt. No. 23) (N.D.N.Y. May 17, 2002) (Kahn, J.), appeal dismissed McMoore v. Miller, No.02-2414, slip op. at 1 (2d Cir. Jan. 23, 2003); Beverly v. Walker, 899 F.Supp. 900, 91 3 (N.D.N.Y. 1995) (Scullin, J.), aff'd, 118 F.3d 900 (2d Cir. 1997).

### ii.   Ground Three

In his third and final claim, Fink asserts that the evidence adduced at trial was legally insufficient to sustain his conviction of the depraved indifference murder of Murray.  Petition, Ground Three.

### A.   Clearly Established Supreme Court Precedent

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged.  See Fiore v. White, 531 U.S. 225, 228-29 (2001); Jackson v. Virginia, 443 U.S. 307, 315 (1979); In re Winship, 397 U.S. 358, 364 (1970).  This inquiry "does not focus on whether the trier of fact made the correct guilt or

---

doesn't have to prove anything to you.  The burden of proof is on the district attorney.

Trial Tr. at 326-27.  The jury is presumed to have followed this and all portions of the trial court's instructions.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000); Shariff v. Artuz, No. 97CIV.2882, 2001 WL 135763, at *3 (S.D.N.Y. Feb. 16, 2001) (citation omitted).

innocence determination, but rather whether it made a rational decision to convict or acquit."
Herrera v. Collins, 506 U.S. 390, 402 (1993).  A habeas petitioner claiming that there was
insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only
if it is found "that upon the record evidence adduced at trial no rational trier of fact could have
found proof of guilt beyond a reasonable doubt."  Jackson, 443 U.S. at 324; see also Schlup v.
Delo, 513 U.S. 298, 323 n.38 (1995); United States v. Powell, 469 U.S. 57, 67 (1984) (citing
Jackson)).  The reviewing court is required to consider the evidence in the light most favorable
to the prosecution, and draw all inferences in its favor.  Jackson, 443 U.S. at 319.

> **B.      Contrary To, or Unreasonable Application of,
> Clearly Established Supreme Court Precedent**

The Appellate Division addressed Fink's appellate challenge to the sufficiency of the
evidence at some length.  In denying this appellate challenge, that court ruled:

> we reject defendant's contention that the evidence was legally
> insufficient to convict him of depraved indifference murder (see,
> Penal Law § 125.25 [2]).  "Depraved indifference is not akin to
> mere recklessness and generally requires conduct that is
> appropriately considered 'imminently dangerous and presents a
> grave risk of death'" (People v Garrette, 223 AD2d 749, 751, lv
> denied 87 NY2d 1019, quoting People v Roe, 74 NY2d 20, 24).
> In a prosecution for depraved indifference murder, the focus is
> "on an objective assessment of the degree of risk presented by
> [the] defendant's reckless conduct, not upon his subjective intent"
> (People v Robinson, 205 AD2d 836, lv denied 84 NY2d 831).
> Here, viewing the evidence, as we must, in the light most
> favorable to the People (see, People v Contes, 60 NY2d 620), we
> find that the People presented legally sufficient objective proof of
> defendant's depraved indifference to human life by showing that
> defendant beat Murray, did nothing to prevent the stabbing and
> helped Keller carry Murray, still breathing, into the river (see,
> People v Garrette, supra).... [C]ontrary to defendant's contention,
> the evidence supports a finding that Murray was alive when he
> was placed into the river.  Not only did Hagadorn testify to this

19

> fact, but defendant's own statement to the police only days after
> the crime (which was admitted into evidence at trial) also
> indicated that Murray, while helpless and unconscious, "was still
> making gurgling noises when [the codefendants were] dragging
> him in the water". Although defendant later contradicted this
> admission at trial, this merely created a credibility question for
> the jury and clearly there was legally sufficient evidence to
> support a conclusion by the jury that decedent's death was caused
> in part by drowning and defendant's participation in this act
> evidenced a depraved indifference to human life.

Fink, 251 A.D.2d at 751-52. Under the AEDPA, this Court is charged with ascertaining

whether this determination of the Appellate Division is either contrary to, or represents an

unreasonable application of, the above-referenced Supreme Court precedent.

"When considering the sufficiency of the evidence of a state conviction, '[a] federal

court must look to state law to determine the elements of the crime.'" Ponnapula v. Spitzer,

297 F.3d 172, 179 (2d Cir. 2002) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir.

1999)); see also Fama, 235 F.3d at 811 (2d Cir. 2000) (citing Quartararo); Flowers v. Fisher,

No. 03 CV 5405, 2006 WL 3050876, at *8 (E.D.N.Y. Oct. 23, 2006) (citations omitted); Hill v.

Miller, No. 03-CV-1738, 2005 WL 807044, at *2 (E.D.N.Y. Apr. 8, 2005) (quoting

Ponnapula).

For the jury to properly convict Fink of the depraved indifference murder of Murray, the

prosecution was required to prove that Fink: (i) under circumstances evincing a depraved and

wanton indifference to human life; (ii) recklessly engaged in imminently dangerous conduct;

(iii) which created a grave risk of death to Murray; that (iv) caused his death. E.g., People v.

Register, 60 N.Y.2d 270, 274 (1983) (citing N.Y. Penal L. § 125.25(2)). A person acts

"recklessly" in this context when he is aware of yet consciously disregards a substantial and

unjustifiable risk to the victim.  Register, 60 N.Y.2d at 274 (citing N.Y. Penal Law § 15.05).

This Court agrees with the Appellate Division that the prosecution established all of these elements with respect to Fink's interactions with Murray on the night he was killed.  The evidence at trial, including Fink's own testimony, established that he:  (i) declared "Yeah, right, whatever" when Keller initially expressed his desire to kill Murray (Trial Tr. at 801-03); (ii) thereafter willingly accompanied Keller to the river (Trial Tr. at 816-17); (iii) swung a stick at Murray while he was walking in front of Fink (Trial Tr. at 727, 820); (iv) began kicking the victim "[a]ll over his body," including the victim's stomach and head (Trial Tr. at 397-98); (v) admittedly kicked the victim in the head while he was unconscious (Trial Tr. at 823-24); (vi) dragged the unconscious victim between thirty to forty feet (Trial Tr. at 728-29); (vii) did nothing to stop Keller from repeatedly stabbing Murray with a screwdriver as he lay helpless and unconscious on the ground after the beating administered to him by Fink, Keller and Hagadorn (Trial Tr. at 398-99, 730-32); (viii) helped Keller drag Murray into the river while the victim was gurgling on his own blood and struggling to breathe (Trial Tr. at 399-400); and (ix) drove the men away from the scene of their crimes in the victim's car, never seeking any medical help for Murray (Trial Tr. at 402, 737).

A petitioner "bears a 'very heavy burden'" in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence."  Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (quoting Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)); see also Urruita v. Greene, No. 05-CV-6153, 2007 WL 2484305, at *4 (W.D.N.Y. Aug. 28, 2007).  The above cited testimony, as well as the other evidence adduced at Fink's trial, clearly surpasses the relatively modest hurdle posed by Winship and its progeny.  The Court accordingly finds that

Fink has failed to demonstrate that the Appellate Division's decision denying this aspect of his appeal, Fink, 251 A.D.2d at 751-52, is either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent.  This Court therefore denies Fink's third and final ground for relief.

**III.   Certificate of Appealability**

Finally, the Court notes that 28 U.S.C. § 2253(c) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[14]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that Fink's habeas petition (Dkt. No. 1) is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and

---

[14]     Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  See Fed.R.App.P. 22(b).

Order upon the parties to this action by regular or electronic mail, and it is further

**ORDERED**, that any state court records that were not filed and docketed in this action

be returned directly to the Attorney General at the conclusion of these proceedings (including

any appeal of this Memorandum-Decision and Order filed by any party).

**IT IS SO ORDERED.**

Dated:          September 26, 2007
                Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge